UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| FREDERICK LEWIS,<br><br>                              Plaintiff,<br><br>v.<br><br>NEWTON, *et al.*,<br><br>                              Defendants. | Civil Action No. 3:14-CV-431 |

### MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) ("Motion") (ECF No. 4). Plaintiff filed a Memorandum in Opposition on July 22, 2014 ("Opp'n Mem.") (ECF No. 6), and Defendants subsequently filed a reply on July 25, 2014 ("Reply Mem.") (ECF No. 7). The issues are fully briefed and a hearing was held on Thursday, October 16, 2014. For the reasons set forth below, the Motion is hereby GRANTED.

### I.   FACTUAL and PROCEDURAL BACKGROUND

Plaintiff, Frederick Lewis ("Lewis) alleges that the Defendants, Jeffery L. Newton ("Newton"), Walter J. Minton ("Minton"), Joan Lafland ("Lafland"), and Paula McKenzie ("McKenzie") [hereinafter, collectively "Defendants"] knowingly restrained him in Riverside Regional Jail ("RRJ") without adequate legal justification for approximately three months. Lewis alleges violations under 42 U.S.C. § 1983 as well as a state law claim of false imprisonment.

Newton is, and was, the Superintendent of RRJ. He is responsible for managing the jail, as well as supervision of the other Defendants. Minton is, and was, the Assistant Superintendent of RRJ.  As such, Minton is responsible for the overall operations of the Jail. Lafland is, and was,

the Records Supervisor of RRJ. The Records Supervisor is responsible for the management of inmates, staff, and facility records to insure completeness and correctness of official files at all times. McKenzie is, and was, the Records Technician of RRJ. McKenzie is responsible for maintaining inmate records which include commitment and release documents and posting inmate release dates when applicable.

On July 9, 2012, Lewis was charged with felony habitual offender driving under Va. Code § 46.2-357, which became Case No. CR13-287. He was subsequently released on bond on July 12, 2012. At that time, however, Lewis had two other outstanding offenses from November 2011, including a DUI charge (Dkt. No. CR13-288) and a felony habitual offender driving charge (Dkt. No. 13-289). Based on these additional charges, on October 9, 2012, the Petersburg General District Court suspended Lewis' bond. Lewis contends that his bond for CR13-287 was suspended on this date as well. However, Defendants contend that Lewis was held without bail only on CR13-288 and CR13-289. (*See* Mot. Ex. 1 ("Commitment Order"); Mot. Exs. 5, 6 ("Order for Continued Custody")). An order for continued custody on CR13-287 was not issued until May 20, 2013. (Mot. Ex. 8.)[1] This Order indicated no change in existing amount of bond and no change in existing bail conditions. (*Id.*)

On May 29, 2013, a continued custody order was issued for CR13-288 and CR13-289. (Mot. Ex. 10.) An order for continued custody on all three charges was subsequently issued on August 14, 2013. (Mot. Ex. 11.) Again, this order noted no change in existing amount of bond and no change in existing bond conditions. (*Id.*)

On August 27, 2013, Lewis was tried and convicted before a jury in Case No. 13-287 and was sentenced to the mandatory minimum of twelve months incarceration. A disposition notice was issued to RRJ. (Mot. Ex. 12.) Based on this notice, Defendant McKenzie calculated Lewis' projected release date of August 27, 2014. On September 12, 2013, Lewis was found not guilty on

---

[1] This change was noted in Lewis' Inmate Activity Report as an "FYI" to inform RRJ to transport Lewis on the designated hearing date. (Compl. Ex. X.)

CR13-289, (Mot. Ex. 4), and an order for continued custody on CR13-288 was issued. Finally, on October 15, 2013, CR13-288 was nolle prosequi. (Mot. Ex. 3.)

Lewis alleges that when he was sentenced for CR13-287 on August 27, 2013, Defendants failed to credit him with the time he served in jail between when his bond was allegedly suspended on October 9, 2012 and the date of his sentence. As a result of Lewis' allegations, his public defender, Shaun Huband ("Huband"), filed a motion with the Petersburg Circuit Court and also attempted to contact the Defendants to request that they check and/or recalculate Lewis' sentence. (Compl. Ex. H.) In support of his argument, Huband attached a General District Court warrant for CR13-287. (*Id.*) The warrant contained handwritten notations which Huband asserted suspended Lewis' bond on CR13-287 on October 9, 2012 until November 9, 2012. In his motion to the Court, Huband argued that "there is no evidence on the warrant or in any other order from the General District Court that the court reinstated the defendant's bond on the case which eventually became case CR13-287 on or after November 9, 2012." (*Id.*)

On October 29, 2013, Huband wrote a letter to Defendant McKenzie, attaching a memo from Tucker Kile, the Court Administrator for the Petersburg Circuit Court, indicating that the memo confirms Lewis' contention that he has been held on CR13-287 and in custody since October 9, 2012. (Compl. Ex. I.) On that same day, RRJ accessed the Virginia state court website, which reflected that Lewis had made bond on July 12, 2012 on CR13-287 and nothing about any bond revocation. (Mot. Ex. 14.) Additionally, RRJ spoke with the Petersburg Circuit Court Clerk regarding the notations on the warrant that the Jail had received for the first time as an attachment to Huband's motion. (Compl. Ex. X.) After speaking with the Clerk, RRJ determined that the handwritten notations on the warrant stated the following under the Virginia Code violation section: "8-20-12 Ct. orders dft to be evaluated for competency to stand trial in inpatient basis." In the right column on the warrant front, there is a reference to "eval at CSH." The handwritten notation on the warrant back, at the top, indicates that on 8/20/12, "Bond: Revoked until 9-24-12 @ 1030 or such later date as necessary to complete eval.," on "9-

3

24-12 Bond reinstated [initials] 9/24/12," and on "10-9-12 Bond Suspended until 11-9-12 @ 830 [initials]." Consequently, as reflected on his Inmate Activity Report, Lewis' credits were recalculated to give him an additional 66 days of credits toward his 12 months sentence on CR13-287. (Compl. Exs. X, E.) As also reflected on that Report, RRJ received from the Sheriff of Petersburg a Certified Credit for Time Spend in Jail there from July 9, 2012 until July 14, 2012, when Lewis was released from there on bond on CR13-287. (Compl. Ex. X.) Lewis was credited with an additional five days for the period that he was at the Petersburg Jail before bonding out, for a total of additional credits of 71 days. (Compl. Ex. E.)

On November 12, 2013, a hearing was held in Petersburg Circuit Court before the Honorable Pamela S. Baskervill to review Huband's original motion. (Compl. Ex. J.) The Court issued a disposition notice that gave Lewis credit as of May, 20, 2013 on CR13-287. (Mot. Ex. 16.) However, the Court also noted that it did not have legal authority or jurisdiction to "interpret" a General District Court's order. Thus, the Circuit Court was without authority to rule on Lewis' motion. With this disposition notice, RRJ then recalculated Lewis' Projected Release Date again, giving him credit from May 20, 2013 on CR13-287, plus the 71 days of additional credits described above, for a new Projected Release Date of March 10, 2014. (Compl. Exs. X, Z.)

Based on the Circuit Court's lack of jurisdiction, Lewis subsequently filed a motion in the Petersburg General District Court requesting that the Court make a factual finding that he had been held in custody since October 9, 2012. The Court ultimately granted Lewis' motion on January 6, 2014. (Compl. Ex. W.) The Court order was then transferred to RRJ on January 7, 2014. (*See* Compl. Ex. C.) Lewis was released from custody the following day. (Compl. Ex. Y.)

By the time he was released on January 8, 2014, Lewis had allegedly served approximately 90 days in jail when he should have been free. Lewis filed a complaint on June 12, 2014, which contains three counts against the Defendants. First, Count 1 alleges a violation

of due process under the 14th Amendment.[2] Lewis argues that the Defendants, while acting under color of state law, deprived him of his liberty by imprisoning him beyond the time to which he was sentenced without legal authorization and without providing notice or an opportunity to be heard.

Second, Count 2 is brought pursuant to 42 U.S.C. § 1983, alleging that Defendants acted in a manner that was deliberately indifferent to Lewis' right to be free from cruel and unusual punishment under the Eight Amendment and the Fourteenth Amendment. Lewis argues that the Defendants knew they did not correctly calculate his sentence and failed to release him when he finished serving the time to which he was sentenced.

Third, Count 3 is a state law claim alleging false imprisonment. Lewis argues that the Defendants knowingly restrained him in RRJ without adequate legal justification.

Lewis demands judgment against all Defendants, jointly and severally, in the amount of $900,000 for compensatory damages, together with all costs and attorneys' fees incurred. Additionally, Lewis demands the award of punitive damages against the Defendants, jointly and severally, in a just amount to be established at trial.

## II. LEGAL STANDARD

### A. Dismissal for Failure to State a Claim

Rule 12 of the Federal Rules of Civil Procedure allows a defendant to raise a number of defenses to a complaint at the pleading stage, including failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th

---

[2] Although Lewis does not so specify in Count 1, presumably he is seeking to assert his due process claim pursuant to 42 U.S.C. § 1983. *See* Compl. ¶ 46 ("Defendants . . . while acting under the color of state law, were deliberately indifferent . . . .").

Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001), in addition to any provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and must view these facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the plaintiff's claim is plausible, and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 & n.3. In other words, the plaintiff's complaint must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The Court need not accept legal conclusions that are presented as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

When a court considers a Rule 12(b)(6) motion to dismiss a civil rights complaint, the court "'must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (citation omitted). Qualified immunity is such an affirmative defense because, if

applicable, qualified immunity includes "an entitlement not to stand trial or face the other burdens of litigation." *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *see Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc).

### B. 42 U.S.C. § 1983

"Every person who, under color of any statute . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983. To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). Section 1983 itself creates no substantive rights; it merely provides a procedure for redress for the deprivation of rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).

### III. DISCUSSION

This Court properly has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. To satisfy federal question jurisdiction, a plaintiff's complaint must, as an essential element, contain a right or immunity created by the Constitution or laws of the United States. *See Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127 (1974). In the present case, Lewis' complaint has clearly asserted a federal civil rights cause of action under 42 U.S.C. § 1983. *See Durkin v. Davis*, 538 F.2d 1037, 1039–40 (4th Cir. 1976) (footnotes omitted) ("It seems recognized that the right to jail time awaiting trial on a bailable offense and pending appeal is not a matter of legislative grace but is a right constitutionally mandated, available to state prisoners as well as federal prisoners.").

//

//

**A. Claim 1: Defendants are Entitled to Qualified Immunity**

***i. Parties' Arguments***

Defendants argue that at all times they were acting in accordance with what they believed the law required, and if they are assumed for present purposes to have been mistaken in that regard, that their mistake was not apparent then or now and their conduct was not unreasonable. In response, Lewis contends that in light of his well-documented pleas for release, a reasonable person would have known that their conduct violated Lewis' constitutional rights.

***ii. Analysis***

Qualified immunity is an affirmative defense that must be proven by the government official. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Generally, government officials performing discretionary functions[3] are protected from liability for civil damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. This protection is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court has stressed the importance of resolving immunity questions at the earliest possible stage of litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A determination that a defendant is entitled to "qualified immunity involves a two-step procedure 'that asks first whether a constitutional violation occurred and second whether the right violated was clearly established.'" *Gregg v. Ham*, 678 F.3d 333, 338–39 (4th Cir. 2012) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). For a right to be clearly

---

[3] The parties do not dispute in this section whether Defendants were performing "discretionary functions," although with regards to his sovereign immunity argument, Lewis contends that Defendants were performing ministerial functions. (*See* Opp'n Mem at 28–29.) The Fourth Circuit has held that "[p]rocessing individuals for incarceration or release according to the terms of court orders does not generally involve the exercise of discretion." *Kondrosky v. Pierce*, 85 F.3d 616, 1996 WL 228803, at *1 (4th Cir. 1996). But, the Court also found that the Defendant in that case had to reconcile the court order and the Virginia Code to determine the length of the inmate's sentence. *Id.* Therefore, this uncertain situation necessitated the exercise of discretion. *Id.* Here, Defendants submit that they were following the records and instructions of the Petersburg General District Court and Circuit Court as well as applying Virginia law, including Va. Code § 53.1-187, directing that, "In no case is a person on bail to be regarded as in confinement for the purposes of this statute." (Mot. to Dismiss 17.) Therefore, the Defendants were exercising their discretion, and qualified immunity may thus be applicable.

established, it "must be sufficiently clear that every reasonable officer would [have understood] that what he is doing violated that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2078 (2011)). The "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 131 S. Ct. at 2083. Furthermore, the Court's "proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). In sum, "[r]uling on a defense of qualified immunity therefore requires (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate that right." *Id.*

To prove defendants are not entitled to qualified immunity, a plaintiff can "point either to cases of controlling authority in their jurisdiction at the time of the incident or to a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Ashcroft*, 131 S. Ct. at 2086 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)) (internal quotation marks omitted).

With this in mind, the Defendants in the instant case are clearly entitled to qualified immunity. The records before the Court indicate that there was no basis for a reasonable officer to believe he was violating an inmate's constitutional rights. Rather, to the contrary, the Defendants properly acted in accordance with each Court order they received. As detailed above, Lewis' inmate activity reports reflect the calculation and recalculations of his sentence once the Jail received lawful authorization from the Court. For this reason, the Defendants' Motion is GRANTED. For the sake of thoroughness, however, the Court will briefly address Defendants' remaining claims.

//

//

### B. Claim 2: Failure to State a Due Process Claim

#### i. *Parties' Arguments*

Defendants argue that Plaintiff at all times was lawfully held at RRJ pursuant to the records and information the Jail received from the Petersburg General District Court and Circuit Court. Additionally, Defendants argue that Lewis was not actually in custody pursuant to Va. Code § 53.1-187, which states that "[i]n no case is a person on bail to be regarded as in confinement for the purposes of this statute." Lewis, on the other hand, argues that Defendants were deliberately indifferent to his repeated pleas that he was being held beyond his sentence.

#### ii. *Analysis*

To establish liability under § 1983, a plaintiff must show that the defendants acted intentionally in depriving him of his protected interest. Because the protections of the Due Process Clause are not triggered by the "mere failure to take reasonable care," negligent deprivations are not actionable under § 1983. *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995); *see also Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).

In this case, Lewis cannot sufficiently make out a claim for intentional deprivation. The records in this case clearly illustrate Defendants' efforts to recalculate Lewis' sentence once they received lawful authorization from the Court. At best, Defendants acted negligently, but negligence is insufficient to establish a claim under § 1983.

### C. Claim 3: Failure to State a Deliberate Indifference Claim

#### i. *Parties' Arguments*

Defendants highlight the very high standard for proving deliberate indifference and cruel and unusual punishment. They argue that Lewis' pleadings and exhibits coupled with public court documents show no basis for considering any defendant to have been deliberately indifferent to the basis or length of Lewis' detention. In response Lewis argues that the Defendants had notice that he was being held unlawfully based upon his numerous documented requests for sentence recalculations and failed to promptly intervene.

### ii. *Analysis*

Incarceration beyond the termination of one's sentence may state a claim under the Eighth Amendment. *Golson v. Dep't of Corr.*, 914 F.2d 1491, 1990 WL 141470, at *1 (4th Cir. 1990). To prevail on that theory, a plaintiff must demonstrate that the defendant acted with deliberate indifference. *Id.* (citing *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989)). The deliberate indifference standard has both an objective prong—showing a sufficiently serious deprivation of a basic human need—and a subjective prong—showing that the official acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This latter prong requires a showing that the defendant had actual knowledge of an objectively serious risk of harm and deliberately disregarded that risk.

In the instant case, Lewis has failed to demonstrate that Defendants acted with deliberate indifference. As stated above, Defendants properly acted in accordance with the orders and records received from the Petersburg courts. Defendants did not act with a culpable state of mind; rather, they reasonably believed that they were acting pursuant to the Court's legitimate authority.

### D. **Claim 4: False Imprisonment Claim**

#### i. *Parties' Arguments*

Defendants argue that there was sufficient legal reasoning for detaining Lewis. Specifically, RRJ was following the information and documents provided by the Petersburg General District Court and Circuit Court. Lewis, however, contends that he has sufficiently stated a claim for false imprisonment as defined under Virginia law.

#### ii. *Analysis*

In Virginia, the tort of false imprisonment is defined as "the direct restraint by one person of the physical liberty of another without adequate legal justification." *Jordan v. Shands*, 500 S.E.2d 215, 218 (Va. 1998) (internal citation and quotation marks omitted). This claim can

easily be dismissed in this case as Defendants clearly had legal justification for detaining Lewis–specifically, Petersburg Circuit Court orders. Therefore, this claim is without merit.

## IV. CONCLUSION

For the foregoing reasons, the Motion is hereby GRANTED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this ___22nd___ day of October 2014.